## 29546. GREER et al. v. STATE OF GEORGIA et al.

GUNTER, Justice.

This is an appeal from a judgment that declared members of the Georgia General Assembly ineligible to serve on the governing body of the World Congress Center Authority. The issue decided adversely to the appellants was whether there was a violation of separation of powers in the "George L. Smith II World Congress Center Act," Ga. L. 1974, p. 174, which amended Ga. L. 1972, p. 245.

The Act created the World Congress Center Authority, a public corporation to plan, construct, erect, acquire, own, repair, remodel, maintain, add to, extend, improve, equip, operate and manage the Georgia World Congress Center. The Act provided that the governing body of the Authority would consist of twenty members, six of whom would be members of the General Assembly. The question raised was whether the Act, because it placed legislative members on the governing body of the Authority, was unconstitutional as violative of Art. I, Sec. I, Par. XXIII (Code Ann. § 2-123) of the Georgia Constitution, which states: "The legislative, judicial and executive powers shall forever remain separate and distinct, and no person discharging the duties of one, shall, at the same time, exercise the functions of either of the others, except as herein provided."

The judgment of the trial court declared that those provisions of the Act pertaining to the membership of legislators on the Authority were unconstitutional, that the remaining sections of the Act were severable and constitutional, and that a resolution adopted by the Authority on August 19, 1974, was valid. That resolution had ratified all previous actions of the Authority and was adopted by the Authority without the participation of the legislator-members.

1. Appellants contend that the provisions of the Act which permit legislators to participate as members of the Authority are not violative of the separation of powers provision in the Georgia Constitution. Appellants argue that the purpose of the separation of powers provision in the Constitution is to prevent any one of the three traditional branches of government from usurping the

powers and functions of any other branch. They contend that the Authority is a special instrumentality of government outside of each of the three traditional branches of the government. They argue, therefore, that the Authority performs "proprietary," not "governmental," functions and that the constitutional balance between the separate branches of government can in no way be disturbed by permitting six members of the legislature to sit on the twenty-member governing board of the Authority.

Appellants rely on *Sheffield v. State School Building Authority,* 208 Ga. 575 (68 SE2d.590) (1952). There, in the context of a bond validation proceeding, this court held that the Speaker of the House of Representatives of Georgia could sit as a member of the School Building Authority without offending the provision of the Georgia Constitution (Code Ann. § 2-1606) that prohibits a member of the General Assembly from holding any "civil office" created during his term of service in the General Assembly. This court held that membership on the governing body of the School Building Authority was not a "civil office" within the meaning of this constitutional provision. The "pure" separation of powers issue was neither raised nor decided in *Sheffield.*

Conceding that the "civil office" prohibition is a "narrow" separation of powers proscription, it does not encompass the broader question, contained in the "pure" proscription, of whether persons who participate as members of the governing board of the Authority are performing executive rather than legislative functions. The "pure" constitutional proscription (Code Ann. § 2-123) bars a member of the legislative or judicial branch from exercising the functions of the executive branch.

It must be conceded that separation of powers is not a rigid principle. "While the Constitution declares that the three departments of government shall be separate and distinct, this separation is not and from the nature of things cannot be total." *Mayor &c. of Americus v. Perry,* 114 Ga. 871, 881 (40 SE 1004) (1902); *Beall v. Beall,* 8 Ga. 210 (1850). "While the departments of government must be kept separate and distinct, it is impossible to draw a mathematical line by which every action can be exactly

classified; and there are some matters which do not inherently and essentially appertain to one department of government rather than to another." *Southern R. Co. v. Melton,* 133 Ga. 277 (65 SE 665) (1909).

The separation of powers principle is sufficiently flexible to permit practical arrangements in a complex government, and though it is not always easy to draw a line between executive functions and legislative functions, it is quite plain to us in this case that the functions performed by the World Congress Center Authority are primarily, if not exclusively, executive.

As a general principle, it is the function of the executive to implement specific legislation enacted. The implementing function, down to the last detail, is assigned to the Authority by the legislation attacked in this case.

The question here is whether the legislature can constitutionally create a special instrumentality of government to implement specific legislation and then retain some control over the process of implementation by appointing legislators to the governing body of the instrumentality. Appellants' argument is that there is no constitutional defect in this arrangement. Carried to its logical extreme, this arrangement would permit the General Assembly to appoint an ad hoc committee of its own members to implement specific legislation. The case at bar does not present such a logical extreme, but it evidences the same constitutional infirmity. We have to conclude that a legislator who participates as a member of the governing body of a public corporation such as the World Congress Center Authority is performing executive functions.

In State v. Bailey, 151 W. Va. 79 (150 SE2d 449) (1966), the Supreme Court of Appeals of West Virginia ruled squarely on almost the same issue that we have here. It stated: "From the above-cited decisions of this court and other appellate courts it is manifest that the powers granted and the duties imposed upon the State Building Commission of West Virginia by the legislative enactment here involved, Chapter 8, Acts of the Legislature, Regular Session, 1966, are executive or administrative and not legislative in character and that

the provision of Section 1 of the statute that the president of the senate, the speaker of the house of delegates, the minority leader of the senate and the minority leader of the house of delegates shall be members of the commission is violative of Article V of the Constitution of this State in that it attempts to confer and impose executive or administrative powers and duties upon those members of the Legislature and for that reason is null and void and of no force and effect. In enacting the statutory provision that members of the Legislature shall be members of the State Building Commission the Legislature has attempted to confer executive or administrative power and impose executive or administrative duties upon the legislative members of the commission which by reason of the express inhibition in Article V of the Constitution of this State they cannot constitutionally exercise or perform." P. 91.

See also Ashmore v. Greater Greenville Sewer District, 211 S. C. 77 (44 SE2d 88) (1947).

The judgment below was correct in declaring that those provisions of the Act pertaining to membership of legislators on the governing board of the Authority were unconstitutional.

2. Appellants argue next that if the provisions of the Act relating to the appointment of legislators on the Authority are unconstitutional, then the entire Act must be declared unconstitutional. They argue that the removal of the legislators from the governing body of the Authority defeats the purpose of the legislation.

This argument is easily answered. It is plain from the face of the Act that the main purpose of the General Assembly was to construct and operate a World Congress Center. Sec. 2 of the Act states: "No vacancy on the Authority shall impair the right of the quorum [of eleven members] to exercise all rights and perform all duties of the Authority." Ga. L. 1974, pp. 174, 176. Even with the legislators removed, enough members remain on the governing board of the Authority to constitute a quorum and to accomplish the purpose of the legislation. Where an Act cannot be sustained as a whole, the courts will uphold it in part if it is reasonably certain that to do so would correspond with the main intent and purpose which the

legislature sought to accomplish and if, after the unconstitutional part is stricken, there remains enough to accomplish that purpose. *Bennett v. Wheatly,* 154 Ga. 591 (115 SE 83) (1922); *Wright v. Southern Bell Tel. &c. Co.,* 127 Ga. 227 (56 SE 116) (1906). There is no reason not to apply this principle where the constitutional defect arises from a violation of the separation of powers principle. See *State v. Bailey,* supra, and *Fuller v. State,* 232 Ga. 581 (208 SE2d 85) (1974), (Hall, J., concurring specially).

The provisions of the Act held to be unconstitutional and stricken from the Act in Division 1 of this opinion do not render the entire Act unconstitutional. The severance surgery performed by the trial judge was correct.

*Judgment affirmed. All the Justices concur, except Hall, J., who concurs specially. Hill, J., disqualified.*

ARGUED JANUARY 20, 1975 — DECIDED FEBRUARY 11, 1975.

*Charles E. Tidwell,* for appellants.

*Arthur K. Bolton, Attorney General, Timothy J. Sweeney, Assistant Attorney General,* for appellees.

HALL, Justice, concurring specially.

I concur in the judgment for the reasons stated in my concurring opinion in *Fuller v. State,* 232 Ga. 581, 586 (208 SE2d 85).