## A02A1975. BUCHHEIT v. STINSON.
(579 SE2d 853)

ADAMS, Judge.

After this court's grant of her application for discretionary review, Mary Buchheit appeals the superior court's finding that she committed an act of family violence. After reviewing the record, we agree with Buchheit that based on the record before us, the trial court's decision was erroneous. Accordingly, we reverse.

The facts surrounding this appeal are the following. On December 17, 2001, Ashley Stinson, as guardian ad litem for minor child R. B., filed a petition to prevent family violence. The petition alleged that R. B.'s mother, Buchheit, had caused the child emotional and physical harm. It stated that Buchheit was involved in a custody matter regarding her two minor children and that a guardian had been appointed. The petition further alleged that the guardian had learned that Buchheit had "pulled the . . . child's hair and hit the

child due to the child speaking with the guardian and/or because of what the child has told the guardian's office." Further, the petition claimed that Buchheit had "threatened the child that she will not love her anymore if she tells anyone what defendant has said — or if she says she wants to live with her father." The petition also stated: "[t]he defendant has slapped the minor child when the child has tried to explain that she wants to stay out of the middle or doesn't want to talk about the custody case." The petition claimed that the guardian had confirmed the details with the child and also stated that the child was afraid of further violence if she stayed in the home. The petition claimed that Buchheit had therefore committed the act of simple battery; it sought to have the child placed with the father who had joint legal custody of the children, or in the alternative, to place the child with the Department of Family and Children Services. The petition concluded with the statement: "[t]he guardian has made a school visit 12/12/01. The child confirmed the above continues in the home. The child is afraid of further violence if she remains in the home."

On that same date, the court entered "An Ex-Parte Temporary Protective Order," under the Family Violence Act, instructing the sheriff to effectuate transfer of custody of R. B. to her father and further directing that the mother was to have "absolutely no contact" with the child until further order of the court.

On January 16, 2002, the court held the contested evidentiary hearing on the family violence petition. The primary witness at the hearing was nine-year-old R. B., who described the incident in which her mother slapped her on the face with an open hand. She said that her mother slapped her when she responded: "it's none of your business." R. B. testified that there was only one slap, it left no bruises; it stung for a minute and then went away. She said that her mother did not slap her again after that incident. R. B. did not testify to any other conduct by her mother which would qualify as a crime under the Family Violence Act. Nevertheless, she stated that her mother threatened to hit her if she did not report conversations with her father and that she was a little afraid of staying with her mother because of her mother getting angry. She also reported that her mother hit her three times on the leg one day when R. B. did not want to go to a garage sale.

Buchheit then testified, stating that on the incident in question, R. B. had been very disrespectful and that because of this behavior, she slapped R. B. on the leg and then held the child's face and told her to look her in the eye. She denied that she had slapped R. B. on the face. Buchheit also remembered an incident in which she was trying to pop R. B. on the leg and when the child put her hand over her leg, Buchheit accidentally struck her hand. Buchheit denied that she

had pulled her daughter's hair, as alleged in the family violence petition.

The guardian who filed the petition testified that the school counselor had called her about R. B. The guardian stated that R. B. felt that she was being harmed physically and emotionally and that, for this reason, she filed the petition. She stated that in addition to the incident in which Buchheit slapped R. B. on the face, she also filed the petition because of her concerns about Buchheit slapping the child's body and pulling her hair. Although a custody matter was pending in the case at the time that the court held this hearing on the family violence petition, the materials from that case are not before us.

After holding the hearing, the court found that there was a preponderance of evidence that an act of family violence had occurred. Specifically, the court stated that an act of simple battery occurred and rejected the mother's argument that the punishment was a permissible exercise of corporal punishment. The court found that for the child to stay in the mother's home during the custody litigation might contribute to long-term emotional harm and that it was entering the order to protect the child from interrogation, intimidation, and fear of future physical violence. Accordingly, the court entered a Final Six Month Protective Order, stating that the mother should only be allowed supervised, therapeutic visitation with the child until the psychologist deemed it appropriate. Buchheit filed a motion for new trial, which the trial court denied. From that denial Buchheit filed a discretionary application, which this court granted.

1. As a threshold matter, we address our jurisdiction to entertain this appeal. The trial court entered the six-month protective order on January 24, 2002, and it expired on July 24, 2002. Thus, the issues raised arguably are moot, and "mootness is a mandatory ground for dismissal." *Collins v. Lombard Corp.*, 270 Ga. 120, 121 (1) (508 SE2d 653) (1998). However, in another case which involved the question of mootness in the context of a six-month order under the Family Violence Act, this court stated:

> if an issue . . . is capable of repetition yet evades review, we do not view that issue as moot. This is true for those matters in which there is intrinsically insufficient time to obtain judicial relief for a claim common to an existing class of sufferers. This case involves a six-month protective order, which is the maximum length of time such order may remain in effect. Given the time constraints of appellate courts, it often is not feasible to reach the merits of this type of appeal during the six-month window. Accordingly, we

must address whether the various issues are common to an existing class, yet tend to evade review.

(Punctuation and footnotes omitted.) *Baca v. Baca*, 256 Ga. App. 514, 515-516 (1) (568 SE2d 746) (2002). We find that this issue involving the Family Violence Act is not moot, given that it involves issues that both affect an existing class of sufferers and tend to evade review. Id. at 516.

2. In her sole enumeration of error, Buchheit claims that the trial court erred in entering the Final Six Month Protective Order finding that an act of family violence had occurred. She argues that corporal punishment of this nature does not constitute "family violence" under OCGA § 19-13-1 and that the court erred in finding that this slap constituted "simple battery." In support of her position, she cites OCGA § 16-5-23 (f) which specifically exempts corporal punishment from the purview of battery. She also contends that, as defined by OCGA § 19-13-1, family violence is limited to specified crimes.

In an opposing brief, the father argues that R. B. testified to several different acts by her mother that the court considered in determining whether family violence had occurred. He also cites the court's finding that it was "concerned that the child would face retribution and continued emotional abuse if she were to return to her Mother's home" and further contends that the action was not, as the mother contends, a "custody dispute in disguise."

In reviewing the superior court's decision, we note the standard of review applicable to these cases:

> It is not our function to second-guess the trial court in cases such as this, which turn largely on questions of credibility and judgments as to the welfare of the child. The trial court is in the best position to make determinations on these issues, and we will not overrule its judgment if there is any reasonable evidence to support it. [*Lewis v. Lewis*, 252 Ga. App. 539, 543 (2) (557 SE2d 40) (2001).]

*Baca v. Baca*, 256 Ga. App. at 517 (2).

The definition of "family violence" is set forth in OCGA § 19-13-1, which provides in pertinent part:

> the term "family violence" means the occurrence of one or more of the following acts between . . . parents and children . . . : (1) Any felony; or (2) Commission of offenses of battery, simple battery, simple assault, assault, stalking, criminal damage to property, unlawful restraint, or criminal trespass.

The statute then specifically states:

> [t]he term "family violence" shall not be deemed to include reasonable discipline administered by a parent to a child in the form of corporal punishment, restraint, or detention.

The definition of simple battery is set forth in OCGA § 16-5-23, as intentionally making physical contact of an insulting or provoking nature with the person of another or intentionally causing harm to another. Subsection (f) specifically applies to simple battery committed between parents and children. Again, that section specifically exempts "corporal punishment" administered by a parent from its purview.

Although several cases have interpreted the provisions under OCGA § 19-13-1 regarding intra-family violence against children, see, e.g., *Bowers v. State*, 241 Ga. App. 122 (526 SE2d 163) (1999), we are unaware of any cases which involve a precise definition of "reasonable discipline" by means of "corporal punishment" under the statute. Because of the absence of any cases specifically defining these terms under the Family Violence Act, we look to other sources to elucidate this exception. For example, the defense of justification, set forth in OCGA § 16-3-20 (3), states that a claim of justified conduct may be asserted: "[w]hen the person's conduct is the reasonable discipline of a minor by his parent or a person in loco parentis."

The definition of "corporal punishment" has been most discussed by this court in the context of corporal punishment administered at schools. OCGA § 20-2-730 et seq. provides a statutory framework to govern the administration of corporal punishment at schools. OCGA § 20-2-731 specifically delineates when and how corporal punishment may be administered, stating in subsection (1) that the punishment "shall not be excessive or unduly severe." The provisions of this statute have been interpreted by several cases.

In *Maddox v. Boutwell*, 176 Ga. App. 492 (336 SE2d 599) (1985), the issue was whether a paddling which had been administered to a student by his school principal was in bad faith and excessive and unduly severe. The paddling had resulted in "severe bruises" to the student's buttocks and thigh. Id. at 493. In finding that the trial court correctly granted summary judgment to the defendants, the court concluded that the punishment had been neither excessive nor unduly severe. Id. at 494. See also *Mathis v. Berrien County School Dist.*, 190 Ga. App. 255 (378 SE2d 505) (1989).

More recently, in *Daniels v. Gordon*, 232 Ga. App. 811, 812 (1) (503 SE2d 72) (1998), a student's father sued a teacher and the school principal, alleging that his son had been physically restrained and choked by the teacher. The student had allegedly received medi-

cal treatment for neck pain which allegedly arose from the incident, and the father claimed that the teacher's actions were violative of these corporal punishment laws.

Nonetheless, this court determined that the father had failed to submit any evidence to substantiate his assertions that the teacher had choked his son, as opposed to merely grasping his face; the father also failed to submit any evidence that the injuries were caused by the alleged choking incident. On the other hand, the defendants had submitted the teacher's affidavit in which she claimed that she noticed no injury to the student and that she had grasped his face in an effort to turn his face to her and get his attention. *Daniels v. Gordon*, 232 Ga. App. at 812. The defendants also submitted the affidavit of the emergency room physician who treated the student the day after the incident in which he averred that his examination did not reveal any visible injury. Based on this evidence, this court found that the teacher's actions did not amount to corporal punishment and that the requirements for inflicting corporal punishment under OCGA § 20-2-730 et seq. did not apply.[1]

In this case, based on the evidence presented at the hearing, we find that the trial court erred in finding that the petitioner had proved the petition's allegations by a preponderance of the evidence, as required under OCGA § 19-13-3 (a). Specifically, there was insufficient evidence presented at the hearing that Buchheit had committed an act of family violence battery, as opposed to administering "reasonable discipline" in the form of "corporal punishment."

In entering its order the court stated: "[t]he findings of physical bruising and redness are not necessary in order to find that a simple battery has been committed since the contact, which is admitted by the mother, was certainly of an insulting or provoking nature." While we recognize that the trial court correctly noted that it was not necessary that there be visible harm to the child to find that a simple battery had occurred, see *Ross v. State*, 214 Ga. App. 385 (448 SE2d 52) (1994), the court's finding that the contact between Buchheit and R. B. was "of an insulting or provoking nature" was beside the point. For in some instances, permissible "reasonable discipline" administered in the form of "corporal punishment" might be insulting or provoking in nature. Focusing on this portion of the analysis does not resolve whether the contact was permissible discipline under the Family Violence Act.

Here, there was no evidence that Buchheit's action of slapping her child in response to the child's disrespectful behavior fell outside

---

[1] This court also found that the principal and teacher were entitled to official immunity as employees of the school district. *Daniels v. Gordon*, 232 Ga. App. at 813 (2).

the bounds of permissible "reasonable discipline." Although we recognize that in certain instances paddling or spanking *could* rise to the level of family violence under the statute, the circumstances in this case did not constitute this prohibited conduct. See generally *Howell v. State*, 180 Ga. App. 749, 750 (1) (350 SE2d 473) (1986) (parents charged with cruelty to children based on striking child in the face). From reviewing the cases regarding "corporal punishment" at schools, it seems that Buchheit's limited, specifically applied consequence to the child's behavior did not exceed "reasonable discipline" administered through "corporal punishment." Because her action constituted "reasonable discipline," she did not commit a simple battery under the Family Violence Act.

*Judgment reversed. Ruffin, P. J., concurs. Barnes, J., concurs in the judgment only.*

DECIDED MARCH 20, 2003.

*Michael J. King, Christopher J. McFadden*, for appellant.
*Kathleen B. McEvoy, Linda S. McKinley*, for appellee.